CABALLERO LAW LLLC

MATEO CABALLERO          10081
P.O. Box 235052
Honolulu, Hawaiʻi 96823
Telephone:  (808) 600-4749
E-mail:      mateo@caballero.law

Attorney for Plaintiff
JONATHAN MCCLURE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHAN MCCLURE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | CIV. NO. 21-201<br><br>[CIVIL RIGHTS ACTION]<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS A-C** |

Plaintiff, by and through his undersigned attorney, bring this complaint

against the above-named Defendant, and in support thereof allege the following:

**PRELIMINARY STATEMENT**

1.      For most of his adult life, Plaintiff JONATHAN MCCLURE ("***McClure***")

has dreamed of being a firefighter with the Honolulu Fire Department ("***HFD***").

After extensive studies, preparation, and 16 years of applying, in 2018 at the age of

45, HFD hired McClure for its 105th fire fighter recruit class.

2.     To be permanently hired as a fire fighter, McClure had to first complete HFD's Recruit Training Academy (the "***Academy***"). At the Academy, even though he was performing as well or better than many younger recruits, McClure was immediately treated worse for "being too old," including being called names such as "grandpa," gaslit about his appearance and performance, and constantly and repeatedly encouraged to drop out; all because of his age.

3.     Much of the harassment and discrimination against McClure happened at the hands of recruit training officers in charge of the morning lineups and physical training at the Academy. In spite of the harassment and discrimination, McClure managed to excel at the various sections of the Academy where he did not have to interact with these training officers, including driver training, the much dreaded emergency medical technician ("***EMT***") training, and water safety. But that all changed once McClure reached the firefighting section in January 2019. In that section, McClure would be at the daily mercy of the same recruit training officers who had been his principal tormentors and harassers at the Academy.

4.     Knowing that he was being setup for failure because of his age, McClure then complained to the union, to a captain, and even to the battalion chief. Instead of adequately investigating the harassment and discrimination against McClure, HFD allowed the recruit training officers to seriously and unnecessarily injure McClure's back during training, initially discouraged him from seeking care, and

amped up the daily discrimination, harassment, and calls to resign in ways that younger recruits never had to endure.

5.    Just over a month after McClure first complained about age discrimination, HFD terminated McClure based on plainly false and prejudiced back-to-back evaluations in the firefighting section by the same recruit training officers that had been targeting McClure because of his age. These evaluations were false, because McClure was in fact successfully completing the exercises and drills in firefighting section, doing as well or better than younger recruits. McClure had also received overwhelmingly positive evaluations in other sections of the Academy.

6.    If there was any doubt that McClure was discriminated against, harassed, and eventually retaliatorily terminated because of his age, one of the captains in charge of the Academy admitted as much to a fellow firefighter. Roughly a month before McClure's termination, a firefighter tried to intercede on behalf of McClure, asking the captain in charge of recruit training how the firefighter could help McClure better deal with the issues he was encountering in the Academy. The captain candidly responded "make him younger."

## JURISDICTION AND VENUE

7.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs bring this action under the Age Discrimination in Employment Act

("*ADEA*"), as amended by the Older Workers Benefits Protection Act, 29 U.S.C. § 621 *et seq*. and its implementing regulations.

8.     Any state law claims contained herein form part of the same case or controversy as gives rise to Plaintiffs' federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.     This Court may order declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10.     Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by Section 7(b) of the ADEA (referencing 29 U.S.C. § 216(b)), and Hawaiʻi Revised Statutes ("*H.R.S.*") §§ 378-5(c) and 368-17(a)(8).

11.     Venue is proper in the United States District Court for the District of Hawaiʻi pursuant to 28 U.S.C. § 1391(b), because Defendant is located in this district, and the events giving rise to Plaintiff's claims occurred in this district.

12.     On or about March 12, 2019, Plaintiff filed a charge (the "*Charge*") of discrimination with the Equal Employment Opportunity Commission ("*EEOC*") and the Hawaiʻi Civil Rights Commission ("*HCRC*"). A true and correct copy of the Charge is attached hereto as **Exhibit A**.

13.     On or about January 26, 2021, the EEOC issued a Notice of Suit Rights to Plaintiff. A true and correct copy of this notice is attached hereto as **Exhibit B**.

14.     On or about February 4, 2021, HCRC issued a Notice of Right to Sue. A true
and correct copy of this notice is attached hereto as **Exhibit C**.

15.     Plaintiff has fully complied with all administrative prerequisites for the
commencement of this action, which was timely filed within Plaintiff's receipt of
the EEOC and HCRC notice letters.

**PARTIES**

16.     Plaintiff McClure is and has been a resident of the City and County of
Honolulu, State of Hawaiʻi, at all times pertinent hereto. At all relevant times,
Plaintiff was over age 40 and within the protected age group.

17.     Defendant CITY AND COUNTY OF HONOLULU ("*City*") is and has been
a duly organized municipal corporation of the State of Hawaiʻi at all times
pertinent hereto. Defendant is and was, at all relevant times, an "employer" as
defined in 29 U.S.C. § 630.

**FACTUAL ALLEGATIONS**

**A.     McClure Is Accepted as a Recruit at the Honolulu Fire Department.**

18.     McClure has dreamed of being a firefighter for most of his adult life.

19.     McClure began applying to HFD in 2002.

20.     In the course of applying to HFD over the years, McClure obtained an EMT
certification, a Class A commercial driver's license with tanker endorsement, a
cardiopulmonary resuscitation/first aid certification from the American Heart

Association, a life guard certification from the American Red Cross, and completed several courses from the Federal Emergency Management Agency Emergency Management Institute and National Wildfire Coordinating Group.

21.     However, McClure, who suffers from learning disabilities, struggled to pass the written test for HFD.

22.     On May 29, 2018, after sixteen years from his first application, McClure received a conditional job offer from HFD.

23.     To be hired by HFD, McClure had to pass a suitability review, including a criminal background check, and a physical examination.

24.     On July 5, 2018, McClure was informed that he had "passed the suitability review of the screening/hiring process."

25.     On August 2, 2018, McClure was examined by the Health Services Branch of the City and County of Honolulu and was deemed "medically capable for job duties."

26.     After 16 years of trying, McClure started working for HFD on September 24, 2018.

27.     McClure left a lucrative and successful career as a farmer and cattle rancher with a higher pay of about $5,207 per month to join HFD at a starting salary of $4,591.00 per month.

28.     In preparation for joining HFD, McClure spent $692.94 purchasing his

uniform and even bought a second car to make sure he would not miss any

trainings.

**B.     At HFD's Recruit Training Academy, McClure Was Harassed and Discriminated Against Because of His Age from Day One.**

29.     When HFD first hired him, McClure, who was born on July 5, 1973, was 45

years old.

30.     At the time, McClure was the oldest of about 28 HFD recruits in his class.

31.     New hires at HFD must go through the Academy, where they are supposed

to be trained and evaluated on different firefighting skills. The Academy is divided

into various sections, including the driver training, medical, water safety, and

firefighter sections. Recruits must successfully complete all sections to graduate

from the Academy.

32.     Since joining the Academy, HFD instructors and staff insulted McClure for

"being too old," made him do more work than other recruits, and evaluated him

unfairly and more harshly than his younger peers, all because of his age.

33.     Other recruits noticed the discriminatory treatment and harassment of

McClure, and recommended him to start taking notes, which he did about a month

after he started the Academy.

34.     In the Academy, McClure suffered constant insults because of his age,

primarily at the hands of Recruit Training Officers Leighson Tanaka ("***RTO***

*Tanaka*"), who taught physical training and the firefighting section of the Academy, and would often harass McClure during lineup in the morning.

35.     For instance, during lineup, the Academy often made recruits do pushup when it was somebody's birthday. The number of pushups equaled the age of the person whose birthday was that day. On November 5, 2018, McClure overheard RTO Tanaka say that he could not wait for McClure's birthday for everyone to do one hundred pushups.

36.     On November 23, 2018, during a hula-hoop exercise, when it was McClure's turn, RTO Tanaka said something to the effect that "Oh no, all his bones are gonna break!"

37.     On January 10, 2019, RTO Tanaka said to the class: "who is the youngest? We know who the oldest is."

38.     On February 8, 2019, firefighter Esteban said to McClure "so you're the 45 year old." Later, when he thanked Esteban for coming to the Academy that day, Esteban called McClure "grandpa."

39.     McClure suffered other similar insults on account of his age at the Academy.

40.     But the harassment and discrimination did not end at name-calling. McClure was also scrutinized more closely, and evaluated more harshly and unfairly, because of his age, particularly during lineup and after he started the firefighting section on or around January 9, 2019.

41.     For example, at lineup, even though McClure shaved every day, often with fresh razors, and had other recruits check his face, McClure was told by training officers on several occasions that his shave was sloppy. McClure even received a prescription for this on November 1, 2018. McClure documented that he was in fact cleanly shaven that day.

42.     Other recruits were not held to the same standard and did not received prescriptions for things like forgetting the guidon, bad shaving, not being in full uniform, wearing sun glasses, forgetting part of the standard uniform, etc. Instead, other recruits would often receive tips and encouragement from training officers and HFD staff.

43.     McClure was also assigned additional tasks and made to do additional work in the hopes that he would injure himself, make a mistake, or drop out of the Academy.

44.     Even though leadership duties were supposed to rotate on a weekly basis, McClure was made leader of his class for five weeks in a row. Leadership duties include accounting for recruits, making sure everyone was on time for class, and calling the class to attention, among others. In spite of being leader for so long, McClure successfully completed all the leadership duties. No one else had to be leader for that long.

45.    On several other occasions, McClure was forced to repeat exercises while his peers were not held up to the same standard. For example, during pushups at lineup, recruits would sometimes have to hold a pushup midway. While other recruits would give up before McClure, resting on their knees or collapsing, McClure would be singled out and yelled at, when he would give up long after other younger recruits had given up as well.

46.    RTO Tanaka would also interrupt McClure mid-drill to ask him questions, and, after wasting several minutes talking, would later accuse McClure of coming last in the drill.

47.    While he was being harassed and singled out, McClure was also constantly being discouraged from continuing in the Academy even though he performed as well or better than many of his peers.

48.    In fact, a three month probationary performance evaluation dated December 24, 2018, report states that "Recruit McClure is progressing satisfactorily through the first 3 months of recruit training. He displays a good attitude towards work and is very receptive to criticism in learning the job." McClure did not receive a copy of the December 24, 2018, evaluation while he was in the Academy.

49.    Up to that point, McClure had received at least three evaluations, all of which showed an exam average of at least 87 percent, and with only satisfactory

marks, except once for "Appearance" in relation to the prescription for allegedly not being well-shaven.

50.     On January 5 and 9, 2019, McClure also satisfactorily completed HFD's physical ability tests ("*PAT*"), which consists of an obstacle course and swim/dive events, required for future applications to HFD. McClure did so well in the obstacle course event that Captain Lapinad congratulated him.

51.     McClure's good performance at PAT and these early evaluations did not match what McClure was being told in person by RTO Tanaka and Recruit Training Officer Kealiiaukai Cambra ("*RTO Cambra*"), however.

52.     On November 2, 2018, RTO Tanaka told McClure that he was falling behind and that McClure should know that because of his age he needed to work harder.

53.     On November 9, 2018, RTO Tanaka told McClure to consider whether firefighting was the right job for him.

54.     On or around January 9, 2019, McClure started the firefighting section of the Academy and began having regular interactions with RTOs Tanaka and Cambra, who had been targeting McClure before during lineup and the occasional physical training.

55.     When the firefighting section started, one of McClure's classmates remarked to him, in reference to RTO Tanaka's prior harassment of McClure and what was coming during the firefighting section: "You knew it was coming… it's here."

56.     On January 10, 2019, only the first or second day of the firefighting section, RTO Tanaka pulled McClure aside and told him that his performance was way below the rest of the group, and that after the PAT, "everyone was talking bad about" McClure. RTO Tanaka then said that McClure should "evaluate himself," insinuating McClure should resign. This is even though McClure often did better in physical training and placed higher than other younger recruits.

57.     On January 11, 2019, after finishing in third place in tire pushes and doing well in all tire drills, RTO Tanaka insinuated that McClure was too slow and saying that he was a "4 cylinder" while "everyone else is 8." RTO Tanaka then told McClure that the honorable thing was to resign.

58.     On January 14, 2019, McClure met with RTO Tanaka, RTO Cambra, Captain Jon Omori ("**Captain Omori**"), and Captain Anthony Gaspar ("**Captain Gaspar**"). He was once again pressured into resigning and falsely accused of "always coming in last."

59.     That same day, while Captains Gaspar and Omori were watching, McClure came in 3rd and 5th on all spidermans and bear crawls, 2nd during lunges, and 2nd to 4th in the tire drills with his partners. He did not come in last once.

60.     On January 15, 2019, RTO Cambra asked McClure whether he had "looked himself in the mirror," again insinuating it was time to quit.

61.   That same day, not being able to take the harassment and discrimination anymore, McClure called the Hawai'i Fire Fighters Association (the "**Union**") to complaint about age discrimination and the efforts by HFD to get him to resign because of his age. McClure told a Union Representative about the age discrimination and harassment. Later that day, McClure spoke to Mike Kanashiro at the Union and explained the situation.

**C.    After His Complaint to the Union, and Later to HFD Leadership, the Harassment, Discrimination, and Unfair Treatment against McClure Intensified, Leading Up to His Discriminatory and Retaliatory Termination on February 22, 2019.**

62.   After reporting the discrimination and harassment to the Union on January 15, 2019, HFD retaliated by giving McClure successive and undeserved performance evaluations leading to his dismissal from HFD, just a month later, on February 22, 2019.

63.   On January 17, 2019, McClure met with RTO Cambra and received an evaluation dated January 14, 2019, covering the period from December 17, 2018 to January 11, 2019. The evaluation stated that even though McClure had a test average of around 90 percent, he had an unsatisfactory for physical fitness explaining that "FFR McClure has been unable to complete PT workout" and "was quick to quit," both of which were not true.

64.   The period covered by the January 2019 evaluation only included a couple of days of the firefighting section, which had started on or around January 9, 2019.

13

The unsatisfactory evaluation did not make sense, because McClure had received very positive feedback during the water safety and EMT sections that ran for most of the period covered by the evaluation.

65.    McClure disagreed with the evaluation and explained he had not quit once. RTO Cambra called Captain Omori, who told McClure that signing the evaluation did not mean that he agreed with it, only what HFD thought. Captain Omori told McClure that if he did not sign it, he could not continue in the Academy, and so, McClure signed it. At the meeting on January 17, 2019, McClure asked for the benchmark of physical fitness he needed to meet, but neither RTO Cambra nor Captain Omori gave him one.

66.    On January 18, 2019, while lifting heavyweight tires up six flights of stairs, RTO Tanaka made McClure switch places with another recruit, Nicholas Cockett, so that Cockett would go second as they were going up the stairs. Because Cockett was much shorter than McClure and the tire was not level, McClure injured his back as he had to strain himself more due to height difference and because the tire was not balanced. At the time, after recruit Rylei Urasaki, who had some medical experience, confirmed that the injury was very serious, McClure was warned by RTO Tanaka that McClure could not get hurt or he could get fired. RTO Cambra also told McClure to not talk to anyone about the injury and that he should figure out what was best on his own.

14

67.    On January 22, 2019, just a week after complaining about age discrimination to the Union, Captain Gaspar called McClure to the side after class. The captain was upset that McClure had asked for advice from a firefighter friend and had talked to the Union about the harassment and age discrimination. Captain Gaspar, who oversaw recruit training together with Captain Omori, accused McClure of not following the chain of command.

68.    At that meeting, Gaspar also said he thought McClure was not in shape and encouraged him to resign so that he could have a chance of coming back. Gaspar warned McClure that if he got fired, he would not get a chance of coming back, and reminded him that if he received another unsatisfactory for physical fitness, he could be terminated.

69.    When McClure asked for temporary accommodation due to his back injury, McClure was initially denied any accommodations. Other recruits, on the other hand, were accommodated for being sick or suffering other physical injuries to their backs and shoulders, allowing them to skip or modify certain exercises, or cancelling physical training for everyone all together.

70.    Instead of being given accommodations, various exercises that put a strain in McClure's back injury were purposefully selected during physical training. These exercises included carrying a 175 lb. dummy and putting it down multiple times for no reason, making him spray water with the hose for longer, unloading and

reloading the fire hose multiple times, doing squats in a way that further hurt his back, and completing drills that were supposed to be group exercises without the help from his peers, among others.

71.     Even when McClure eventually received some accommodations, almost a month after his back injury, those "accommodations" were sporadic and designed to discourage and setup McClure for failure. On three occasions, February 8, 12, and 13, 2019, RTO Tanaka did not allow McClure to complete physical training due to his back injury and instead had him run laps, and do towers and pushups. The failure to participate in physical training those few days would later be used as an excuse for McClure's termination.

72.     On February 12, 2019, RTO Tanaka pulled McClure from the regular physical training 15 minutes before the group was done training. RTO Tanaka then made McClure run 22 laps for 50 minutes, 5.5 miles in total. This was after McClure had completed most of a very arduous physical training and the rest of the recruits in his group were already done and resting. The most anyone else in McClure's group ever ran was six laps.

73.     After reporting the discrimination, McClure was also given conflicting orders and instructions during physical training in an effort to embarrass him in front of everyone and make him fail at the exercises. For example, McClure was given conflicting instructions by different trainers about wearing the helmet for

putting gas in the cut saw, checking the four points of contact for climbing, putting on the uniform for certain exercises, etc.

74.     On January 28, 2019, McClure complained to Battalion Chief Keith Yasui ("**BC Yasui**") and a Union representative, Russel Wong, that RTOs Tanaka and Cambra had been harassing him because of his age. BC Yasui, who outranked Captains Gaspar and Omori and RTOs Cambra and Tanaka, assured McClure that HFD would investigate the matter but nothing came out of it and matters only got worse.

75.     On February 15, 2019, McClure was doing a water spraying drill with RTOs Tanaka and Captain Cabral. This was an exercise that usually involves two people holding a very powerful 2.5 inch hose, but that day, they made the recruits hold the hose by themselves. Because of the strain and sheer force of the water, recruits held the hose for 10 to 20 seconds at a time. Knowing about McClure's injury, RTO Tanaka and Captain Cabral made McClure hold the hose much longer as this further strained his injury.

76.     After the drill, McClure was called into a meeting with Captain Omori, RTO Tanaka, Captain Gaspar, Captain Usui, and Union representative Russel Wong. McClure complained about being targeted and not getting due process. McClure was told that if he could not complete drills because of his back injury, the Union would not be able to support him and he would not graduate. McClure had actually

17

completed the drills that day. At that same meeting, almost a month after McClure injured his back, BC Yasui and Captain Omori insisted McClure have his back checked "right away," telling him to go to the emergency room, if necessary.

77.    After that meeting, McClure went to an orthopedist, who checked his back, and wrote him a note saying that he could be back on full duty. When McClure explained to the orthopedist how he injured his back, the orthopedist was not surprised that McClure injured his back given the description of what he was ordered to do.

78.    On February 22, 2019, McClure received a second evaluation from Captain Omori dated February 11, 2019, which rated him as unsatisfactory in performance expectations and physical fitness. His exam average had improved to over 93 percent.

79.    Concerning performance expectations, the evaluation stated that "FFR McClure has been noticed by the training staff to often choose the easier tasks when given a choice of what to do, whether it be during team drills, setting up for and breaking down drills, or work around the Training Center facility. He should be more cognitive about this and show initiative to take his share of the workload without being told to by the instructors."

80.    McClure was never informed what tasks were easier or more difficult, or informed that he would be evaluated on that basis. Even so, he often was one of the

first to arrive and would volunteer to open the training tower and locker room.

McClure was also one of the last recruits to leave as he would lock up the lockers

and training tower as well. During maintenance, he volunteered to clean toilets and

mop floors, which were some of the least desirable tasks. And during training, he

would help clean up and organize at least as much as everyone else.

81.     Concerning physical fitness, the evaluation stated that "FFR McClure

injured his back on 1/18/2019 which was documented on a DHR-ISWC-1. This has

been removing him from physical fitness workouts needed to prepare him for

firefighting. The RTO's have also reminded him to use proper lifting techniques

when trying to lift heavier objects, but he always reverts back to an importer form.

He will be monitored about these issues."

82.     As explained above, however, McClure injured his back because RTO

Tanaka forced him to do an exercise the wrong way and was forced to do various

exercises that put further strain on his back.

83.     Moreover, other younger recruits with similar injuries or physical issues did

not receive unsatisfactory evaluations. For example, on or around October 31,

2018, a younger recruit in McClure's group overheated during a drill and needed

medical attention. That younger recruit was allowed to take the rest of the day off.

On January 3, 2019, another younger recruit hurt his shoulder swimming, and

could not finish various drills. Finally, on February 6, 2019, a third younger recruit

became too exhausted during physical training and was allowed to sit out the rest of the afternoon while the rest of the group did maintenance. None of these recruits received unsatisfactory evaluations for not being able to finish the drills or getting injured or exhausted during class.

84.     After receiving his evaluation, McClure asked to meet with BC Yasui. That afternoon, McClure met with BC Yasui, Associate Chief Socrates Bratakos, and Captain Wong. McClure explained how the evaluation was not reflective of his performance and how he was being targeted and harassed by RTOs Tanaka and Cambra. After that, Associate Chief Bratakos terminated McClure on the spot.

85.     McClure was the only recruit from his group, Group A, who was terminated due to unsatisfactory ratings. Other recruits in Group A were terminated because they failed skill tests in the medical section.

86.     Other younger recruits were given further opportunity to improve after receiving unsatisfactory evaluations or were not given unsatisfactory evaluations under similar circumstances, but McClure was not given such additional opportunities because of his age.

87.     When terminated on February 22, 2019, McClure was fully qualified for ongoing employment as a HFD recruit.

88.    McClure was terminated because of his age, not his job performance, which was comparable or better than that of many younger recruits who eventually graduated from the Academy.

89.    HFD has provided more favorable employment treatment to younger recruits, who have been allowed to complete the Academy after receiving a DUI and being involved in serious misconduct.

90.    HFD had no legitimate business or nondiscriminatory reason for its adverse actions taken against McClure and the proffered reasons for his termination were pretexts.

91.    Superiors and supervisors at HFD, such as RTOs Cambra and Tanaka, subjected Plaintiff to differential terms of employment because of his age, including harassment not experienced by younger recruits; excessive criticism not otherwise accorded to younger recruits; and the constant requests that the plaintiff resign or suffer discharge.

92.    McClure was terminated in knowing or reckless disregard of the requirements of the ADEA.

93.    At the time of his termination, McClure had completed driver training, medical, and water safety sections of the Academy, and was only three weeks away from completing the firefighter section of the Academy.

94.     Roughly a month before McClure's termination, a firefighter tried to

intercede on behalf of McClure with Captain Gaspar, asking the captain how the

firefighter could help McClure with the issues McClure was encountering in the

Academy. Captain Gaspar responded "make him younger."

**D.      The Illegal Termination from HFD Has Preventer McClure from Being
Hired for Similar Positions.**

95.     The unwarranted dismissal from HFD has caused deep embarrassment,

humiliation, and trauma to McClure among his peers and friends, who often ask

him how things are going at HFD.

96.     McClure has not given up on his dream of becoming a firefighter. Since the

termination, McClure has applied to HFD, the Honolulu Police Department, the

Department of Transportation Fire Department, the Maui County Fire Department,

and the Hawai'i County Fire Department. While he is working as a heavy

equipment operator in a temporary position, he has not been able to secure a

comparable job.

97.     When he applies to these and other jobs, McClure must disclose that he was

terminated for cause at HFD.

98.     Additionally, McClure has been rejected by employers because of job

references by HFD, which falsely claim that he had performance issues and failed

to take responsibility, when he was in fact terminated because of his age and in

retaliation for complaining about age discrimination and harassment.

## FIRST CAUSE OF ACTION
### (Harassment in Violation of the ADEA)

99.   Plaintiff McClure incorporates by reference all prior paragraphs.

100.   HFD engaged in illegal discrimination on the basis of age by allowing McClure's superiors and supervisors at HFD and the Academy to harass McClure on the basis of his age.

101.   At HFD and the Academy, Plaintiff endured discriminatory intimidation, ridicule, and insults from his superiors and supervisors that younger recruits did not suffer and such offensive conduct was sufficiently severe and pervasive to create a work environment that a reasonable person would consider intimidating, hostile, and abusive.

102.   In effect, enduring such offensive and discriminatory conduct from his superiors and supervisors became a condition of employment at HFD for McClure.

103.   As a direct and proximate result of the harassment, Plaintiff has been deprived of income, benefits and other forms of compensation in an amount to be shown at trial, diminution of future earning capacity, as well as other economic losses to be shown at trial.

104.   As a consequence of Defendant's conduct, Plaintiff McClure also suffered severe emotional distress.

105.   The harassment suffered by McClure on the part of his supervisors and superiors constitutes willful violations of the ADEA within the meaning of the Act.

## SECOND CAUSE OF ACTION
### (Discriminatory Discharge in Violation of the ADEA)

106.  Plaintiff McClure incorporates by reference all prior paragraphs.

107.  Defendant engaged in illegal discrimination by discharging Plaintiff on the basis of his age.

108.  During all relevant times, HFD's policy and practice was not to rely on any written guidelines, and there were neither clear and established standards nor selection criteria that had to be followed by HFD staff charged with determining which recruits would continue in and graduate from the Academy.

109.  HFD's policy and practice was to allow HFD staff charged with determining which recruits could continue in and graduate from the Academy to use undisclosed and non-uniform subjective criteria.

110.  Because HFD failed to rely on established or uniform selection standards or guidelines for determining who would continue in and graduate from the Academy and HFD staff relied on subjective criteria, McClure was disparately treated and accordingly, denied his right to equal employment opportunity, as part of a pattern and practice of age discrimination against McClure during the Academy.

111.  When HFD terminated McClure's employment, HFD discriminatorily treated McClure on account of his age.

112.  As a direct and proximate result of his discriminatory discharge, Plaintiff has been deprived of income, benefits and other forms of compensation in an amount

to be shown at trial, diminution of future earning capacity, as well as other economic losses to be shown at trial.

113.   As a consequence of Defendant's discrimination, Plaintiff McClure also suffered severe emotional distress.

114.   Defendant's violations of the ADEA were and are willful violations within the meaning of the ADEA.

## THIRD CAUSE OF ACTION
### (Retaliatory Discharge in Violation of the ADEA)

115.   Plaintiff McClure incorporates by reference all prior paragraphs.

116.   HFD retaliated against Plaintiff and terminated Plaintiff's employment because he complained to the Union and other HFD superiors about the harassment and age discrimination, which resulted in McClure being subjected to further and more extensive harassment, improper conduct, discrimination, pain and suffering.

117.   As a direct and proximate result of Defendant's retaliation, Plaintiff has been deprived of income, benefits and other forms of compensation in an amount to be shown at trial, diminution of future earning capacity, as well as other economic losses to be shown at trial.

118.   As a consequence of Defendant's retaliation, Plaintiff McClure also suffered severe emotional distress.

119.   Defendant's retaliation constitutes a willful violation of the ADEA within the meaning of the Act.

## FOURTH CAUSE OF ACTION
### (Harassment in Violation of H.R.S. Ch. 378)

120.   Plaintiff McClure incorporates by reference all prior paragraphs.

121.   HFD engaged in illegal discrimination on the basis of age by allowing

McClure's superiors and supervisors at HFD and the Academy to harass McClure

on the basis of his age.

122.    As a direct and proximate result of Defendant's harassment, Plaintiff has

been deprived of income, benefits and other forms of compensation in an amount

to be shown at trial, diminution of future earning capacity, as well as other

economic losses to be shown at trial.

123.   As a consequence of Defendant's harassment, Plaintiff McClure also

suffered severe emotional distress.

124.   The harassment suffered by McClure on the part of his supervisors and

superiors constitutes an unlawful discriminatory practice under H.R.S. Chapter

378.

## FIFTH CAUSE OF ACTION
### (Discriminatory Discharge in Violation of H.R.S. Ch. 378)

125.   Plaintiff McClure incorporates by reference all prior paragraphs.

126.   Defendant engaged in illegal discrimination by discharging Plaintiff on the

basis of his age.

127. As a direct and proximate result of his discriminatory discharge, Plaintiff has been deprived of income, benefits and other forms of compensation in an amount to be shown at trial, diminution of future earning capacity, as well as other economic losses to be shown at trial.

128. As a consequence of Defendant's discrimination, Plaintiff McClure also suffered severe emotional distress.

129. McClure's discriminatory discharge from HFD on account of his age constitutes an unlawful discriminatory practice under H.R.S. Chapter 378.

### SIXTH CAUSE OF ACTION
### (Retaliatory Discharge in Violation of H.R.S. Ch. 378)

130. Plaintiff McClure incorporates by reference all prior paragraphs.

131. HFD retaliated against Plaintiff and terminated Plaintiff's employment because he complained to the Union and other HFD superiors about the harassment and age discrimination, which resulted in McClure being subjected to further and more extensive harassment, improper conduct, discrimination, pain and suffering.

132. As a direct and proximate result of the foregoing, Plaintiff has been deprived of income, benefits and other forms of compensation in an amount to be shown at trial, diminution of future earning capacity, as well as other economic losses to be shown at trial.

133. As a consequence of Defendant's conduct, Plaintiff McClure also suffered severe emotional distress.

27

134.    Defendant's retaliation constitutes an unlawful discriminatory practice under

H.R.S. Chapter 378.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McClure demands a judgment against Defendant

City, as follows:

A.      For a declaration that Defendant has discriminated against Plaintiff in the

terms and conditions of employment due to age, in violation of the ADEA and

H.R.S. Chapter 378;

B.      For damages in an amount equal to Plaintiff's back pay and benefits from

February 22, 2019, through the present;

C.      For an award of compensatory damages for Plaintiff's injury to his career,

emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of

life, and other nonpecuniary damages and fringe benefits;

D.      For liquidated and punitive damages;

E.      For reinstatement to Plaintiff's previous position, or in the alternative for

front pay;

F.      For an injunction requiring Defendant and its respective officers and agents

to cease any further acts of discrimination and retaliation against Plaintiff;

G.      For attorney's fees and costs of this suit, including expert witness fees and other litigation expenses, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. § 626(c), and H.R.S. §§ 378-5(c) and 368-17(a)(8); and

H.      For an award of such other and further relief as the Court deems just and proper to address Defendant's age discrimination against Plaintiff.

        DATED: Honolulu, Hawaiʻi April 24, 2021


                        /s/ Mateo Caballero
                        MATEO CABALLERO
                        Caballero Law LLLC

                        Attorney for Plaintiff
                        JONATHAN MCCLURE