IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHAN MCCLURE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | CIV. NO. 21-201-DKW-KJM<br><br>[CIVIL RIGHTS ACTION]<br><br>MEMORANDUM IN SUPPORT OF MOTION TO COMPEL<br><br>Judge: Hon. Derrick K. Watson<br>Trial Date: July 24, 2023 |

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

Plaintiff JONATHAN MCCLURE ("**Plaintiff**") moves to compel Defendant CITY AND COUNTY OF HONOLULU (the "**City**") to respond to Plaintiff's First Request for Production of Documents ("**FRPOD**"), which were served on Defendant City over ten months ago on or around July 27, 2021. *See* Certificate of Service re FRPOD [dkt. 20]. Specifically, Plaintiff moves to compel the City to produce unredacted versions of documents related to the performance and evaluation of recruits for the 104th, 105th, and 106th classes of the Honolulu Fire Department's ("**HFD**") Recruit Training Academy (the "**Academy**"). Such documents are clearly relevant to Plaintiff's age discrimination and retaliation claims under the *McDonnell Douglas* burden shifting framework. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) ("The concept of 'similarly

situated' employees may be relevant to both the first and third steps of the

*McDonnell Dougl*as framework.").

The City's justification for its extensive redactions of the documents

produced is that Plaintiff's request "seeks confidential personnel information and

production would violate individuals' privacy rights as protected by Amendment

IX of the U.S. Constitution, Art. I , Sec. 6 of the Hawai'i State Constitution, and

Hawai'i Revised Statutes ("HRS") chapter 92F." Exhibits B at 9-10[1] [City's

Response to the FRPOD]. This arguments fails for at least four reasons.

First, the City has waived any claim of privilege with respect to the

documents by failing to adequately assert a privilege under the Federal Rules of

Civil Proceure. The City's document production includes extensive, unexplained

redactions in violation of Fed. R. Civ. P. 26(b)(5)(A), which requires the producing

party to "(i) expressly make the claim [of privilege]; and (ii) describe the nature of

the documents, communications, or tangible things not produced or disclosed—and

do so in a manner that, without revealing information itself privileged or protected,

will enable other parties to assess the claim." Here, the City has plainly not done

either in the ten months the FRPOD has been pending. *See* Exhibit E [City's

Privilege Log]. Counsel for the City also failed to sign its objections as required by

---

[1] Page references are to those in the bottom right of the responses added by
Plaintiff for the Court's convenience.

2

Fed. R. Civ. P. 26(g)(1). Thus, any claim of privilege has been waived. *See*

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d

1142, 1149 (9th Cir. 2005) (holding that five month delay in producing privilege

log by sophisticated litigant constituted waiver of privilege).

Second, to the extent the state constitutional protections cited by the City

apply, such protections are at odds with the Age Discrimination in Employment

Act ("***ADEA***") and Federal Rules of Civil Procedure as well as preempted under

the Supremacy Clause of the U.S. Constitution. *See Ragge v. MCA/Universal*

*Studios*, 165 F.R.D. 601, 605 (C.D. Cal. 1995) (in employment discrimination

lawsuit, court granted motion to compel production of job performance evaluations

and disciplinary records for other employees over objection claiming that

production would violate right to privacy under California Constitution).

Third, the Hawai'i Constitution only protects "highly personal and intimate

information" and allows disclosure of such information when a compelling interest

exists for doing so. *Org. of Police Officers v. City & Cnty. of Honolulu*, 149 Haw.

492, 511 (Haw. 2021) ("While public employees' personnel records might contain

'highly personal and intimate information,' the contents of those records that

related to misconduct did not implicate the constitution."); Haw. Const. Art. I, § 6.

Here, the performance evaluations and disciplinary records are not the type of

private records that are regarded as highly offensive and the public interest in

ensuring a discrimination and retaliation-free working environment outweighs the privacy rights of the individuals involved. *See Brown v. State of Or., Dep't of Corr.*, 173 F.R.D. 262, 264 (D. Or. 1997) (in employment discrimination lawsuit, holding that the benefits of disclosing employment records of other applicants to position in Department of Corrections outweighed the disadvantages of disclosure).

Fourth and finally, the privacy rights of the other recruits can adequately be accommodated by making the production of any confidential documents subject to the Stipulated Protective Order [dkt. 31] already entered in this case.

## I.      FACTUAL BRACKGROUND

For most of his adult life, Plaintiff has dreamed of being a firefighter with the HFD. Compl. ¶ 1. After extensive studies, preparation, and 16 years of applying, in 2018 at the age of 45, HFD hired Plaintiff for its 105th firefighter recruit class. *Id*.

To be permanently hired as a firefighter, Plaintiff had to first complete HFD's Academy. *Id*. ¶ 2. At the Academy, even though he was performing as well or better than many younger recruits, Plaintiff was immediately harassed for "being too old," including being called names such as "grandpa," gaslit about his appearance and performance, and constantly and repeatedly encouraged to drop out; all because of his age. *Id*.

Much (but not all) of the harassment and discrimination against Plaintiff happened at the hands of the recruit training officers in charge of the morning lineups and physical training at the academy: Recruit Training Officers ("**RTOs**") Leighson Tanaka and Kealiiaukai Cambra. *Id*. ¶ 51. In spite of the harassment and discrimination, Plaintiff managed to excel at the various sections of the academy where he did not have to interact with these training officers. *Id*. ¶¶ 48-50. But that all changed once Plaintiff reached the firefighting section in January 2019, where he was at the mercy of his principal tormentors and harassers at the academy: RTOs Tanaka and Cambra. *Id*. ¶ 51, 54.

Knowing that he was being setup for failure because of his age, Plaintiff complained to the union, to a captain, and even to the battalion chief. *Id*. ¶¶ 61, 67, 74. Instead of adequately investigating the harassment and discrimination, HFD allowed the recruit training officers to seriously and unnecessarily injure Plaintiff's back during training, initially discouraged him from seeking adequate care, and amped up the daily discrimination, harassment, and calls to resign in ways that younger recruits never had to endure. *Id*. ¶¶ 62-83 .

Just over a month after Plaintiff first complained about age discrimination, HFD terminated McClure based on plainly false and prejudiced back-to-back evaluations in the firefighting section based on information from RTOs Tanaka and Cambra. *Id*. ¶ 84. These evaluations were false, because Plaintiff was in fact

successfully completing the exercises and drills in the firefighting section, doing as

well or better than younger recruits. *Id*. ¶¶ 87-91. If there was any doubt that

Plaintiff was discriminated against, roughly a month before his termination,

firefighter Steven Christian tried to intercede on behalf of McClure, asking Captain

Gaspar how Mr. Christian could help Plaintiff better deal with the issues he was

encountering in the Academy. *Id*. ¶ 94. Captain Gaspar candidly responded "could

you make him any younger." *Id*.

## II.    PROCEDURAL BACKGROUND

After exhausting his administrative remedies, on April 24, 2021, Plaintiff

brought this lawsuit alleging harassment, discriminatory discharge, and retaliatory

discharge on the basis of age in violation of the ADEA and Hawai'i Revised

Statutes ("***HRS***") Chapter 378. Compl. ¶¶ 99-134 [Dkt. 1]. On July 27, 2021,

Plaintiff mailed copies of his FRPOD, which requested among other things:

> all documents summarizing, describing, or referring to
> the performance of the 104th, 105th, and 106th
> firefighter recruit classes of the Honolulu Fire
> Department during the Recruit Training Academy,
> including, without limitation, any records concerning the
> baseline evaluations, logbooks keeping track of the
> performance of recruits at the academy, failure to
> complete exercises, and records concerning
> unsatisfactory performance.

Exhibit A at 17 (Request for Production No. 9). On September 3, 2021, the City

responded to this request as follows:

       Objection: The City objects to this request to the extent it is overly broad, vague and ambiguous, unduly burdensome, and not relevant nor proportional to the needs of the case. The City also object to this request insofar as it seeks confidential personnel information and production would violate individuals' privacy rights as protected by Amendment IX of the U.S. Constitution, Art. I , Sec. 6 of the Hawaiʻi State Constitution, and Hawaiʻi Revised Statutes ("HRS") chapter 92F.

       Response: Based upon the above objection, the City declines to respond with responsive document beyond Attachment 2 to the City's Responses to Plaintiff's First Request for Answers to Interrogatories.

Exhibit B at 9-10[2] (City's Response to Request for Production No. 9). The only attachment to the City's Responses to Plaintiff's First Request for Answers to Interrogatories consisted of Plaintiff's evaluations during the Academy. Exhibit D. Counsel for the City also did not sign this objection as required by Fed. R. Civ. P. 26(g)(1).

On or around March 3, 2022, Plaintiff received a privilege log from the City listing some documents as privileged on account of attorney-client privilege. *See* Exhibit E. None of the redactions were explained and the City did not claim qualified privilege for official information.

Pursuant to LR37.1, counsel for Plaintiff and Defendant conferred telephonically on two occasions, on April 1 and 5, 2022, and extensively via email

---

[2] Page references are to those in the bottom right of the responses added by Plaintiff for the Court's convenience.

as well, in a good faith effort to narrow the disputed issues and eliminate the necessity for a motion, but counsel for the parties could not come to an agreement. *See* Exhibit C [email chain between counsel]. Since then, during depositions, counsel for Defendant has instructed other recruits from Plaintiff's class in the Academy to not respond to questions about their performance or evaluations during the academy, even though Plaintiff observed the performance of various recruits at the time. Dec. of Mateo Caballero ¶ 13.

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Additionally:

> When a party withholds information otherwise
> discoverable by claiming that the information is
> privileged or subject to protection as trial-preparation
> material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents,
> communications, or tangible things not produced or
> disclosed—and do so in a manner that, without revealing
> information itself privileged or protected, will enable
> other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

"The party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of explaining and supporting its

objections." *Islander Grp., Inc. v. Swimways Corp.*, No. CV 13-00094 LEK-RLP,

2014 WL 12573995, at *2 (D. Haw. Jan. 28, 2014). "For purposes of a motion to

compel, an evasive or incomplete response must be treated as a failure to respond."

*Id*. (citing Fed. R. Civ. P. 37(a)(4)).

The Ninth Circuit has held that "boilerplate objections or blanket refusals

inserted into a response to a Rule 34 request for production of documents are

insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at

1149. Similarly, the Circuit Court has held that an unjustified delay in producing

an adequate privilege log constitutes a waiver of any privilege asserted. *Id*.

(holding that five month delay by sophisticated litigant constituted such waiver).

## IV.   ANALYSIS

### A.   Performance and evaluation record are discoverable and relevant to Plaintiff's age discrimination and retaliation claims.

The documents related to the performance and evaluation of other recruits in

the Academy are relevant to Plaintiff's age discrimination and retaliation as they

would show that Plaintiff was treated less favorably than other similarly situated,

younger recruits as well as fellow trainees who had not complained about

discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d at 1158; Compl. ¶ 88

("McClure was terminated because of his age, not his job performance, which was

comparable or better than that of many younger recruits who eventually graduated

from the Academy"). Such evidence is relevant to Plaintiff's discrimination and

retaliation claims under both Fed. R. Civ. P. 26(b)(1) and FRE 401 and a common,

appropriate subject of discovery in discrimination cases. *See Zeinali v. Raytheon*

*Co.*, 425 F. App'x 643, 645 (9th Cir. 2011) (in employment discrimination case,

reversing and remanding "the orders of the district court and magistrate judge

denying [Plaintiff's] request to obtain the job performance records of his co-

workers"); *see also French v. Hawaii Pizza Hut, Inc.*, 105 Haw. 462, 478, 99 P.3d

1046, 1062 (Haw. 2004) (in employment discrimination suit, "as to . . . the request

for the personnel files of all Stadium Mall Pizza Hut employees and documents

relating to the termination or resignation of all Stadium Mall employees, we also

hold that the court abused its discretion in denying [plaintiff's] motion" to compel).

Moreover, Plaintiff has limited his request to the performance and

evaluations of recruits in only three classes of the Academy, including his class

and those immediately before and after Plaintiff's. This constitutes a relatively

small set of recruits, which is proportional to the need by Plaintiff to present

comparator data under *McDonnell Douglas*.

The information requested should not be deidentified as Defendant has

suggested,[3] because (1) Plaintiff observed first-hand the performance of the

recruits in his class and the City seemingly provided this information to the Equal

Employment Opportunity Commission ("***EEOC***"), *see* Exhibit G, so that

---

[3] To date, Defendant has not produced the deidentified information either.

information is plainly not confidential or private, (2) to prove his case, Plaintiff

should be able to ask questions about other recruits with negative evaluations such

as whether they were encouraged to resign or were instead given additional

opportunities and help not afforded to Plaintiff during the Academy, and (3) as

further explained below, the privacy interest in the performance and evaluations is

minimal in light of the compelling public interest in a work environment free from

illegal discrimination and Plaintiff's assurance that he will keep such information

confidential pursuant to the Stipulated Protective Order in this case.

> **B.** **The privacy interests of City employees does not justify the redactions under either federal or Hawai'i law, and are adequately be protected by the Stipulated Protective Order.**

The City's principal reason for failing to produce, or otherwise redact,

documents responsive to Plaintiff's Request for Production No. 9 is that producing

such documents violates the privacy rights of other recruits under Art. I , Sec. 6 of

the Hawai'i State Constitution. This explanation fails for four reasons.

**First**, in failing to produce the requested document, the City did not

"expressly make [a] claim" of privilege as required by Fed. R. Civ. P.

26(b)(5)(A)(i). Counsel for the City also did not sign his objection Plaintiff's

Request for Production No. 9 as required by Fed. R. Civ. P. 26(g)(1). Moreover,

the privilege log produced by the City on March 3, 2022, over six months after the

FRPOD were served, only asserts attorney-client privilege for several documents

unrelated to this request. Exhibit E. Additionally, the City made extensive,

unexplained redactions to the documents produced to Plaintiff without describing

the nature and reasons for the redactions so that Plaintiff could assess any claim of

privilege as required by Fed. R. Civ. P. 26(b)(5)(A)(ii). *See* Exhibit F (sample

redactions); *Islander Grp.*, 2014 WL 12573995, at \*3 (finding that unilateral

"redactions based on confidential or commercially sensitive information are

unfounded because protective measures for such information were agreed to by the

parties and ordered by the Court in the Stipulated Confidentiality Order"). Under

such circumstances, any claim of privilege or objection by the City should be

deemed to have been waived for (1) failure to comply with the Federal Rules of

Civil Procedure and (2) for providing an incomplete and evasive response.

*Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at1149 (holding that five month delay

in producing privilege log by sophisticated litigant constituted waiver of

privilege).[4]

    **Second**, the state privacy protections cited by the City are not grounds for

failing to produce or redact the requested documents. Courts in this circuit have

held that similar privacy protections are not grounds for limiting "the broad

---

[4] To date, the City has not asserted that the documents are protected by the qualified government privilege. *Brown*, 173 F.R.D. at 264 ("Federal common law acknowledges a qualified privilege for official information, including government personnel files.").

discovery authorized by Fed. R. Civ. P. 26(b)(1)." *Brown*, 173 F.R.D. at 264;

*Ragge,* 165 F.R.D. at 605. Moreover, to the extent such protections conflict with

the ADEA and Fed. R. Civ. P. 26(b)(1), they must give way under the Supremacy

Clause of the United States Constitution. *RG Abrams Ins. v. L. Offs. of C.R.*

*Abrams*, No. 221CV00194FLAMAAX, 2022 WL 422824, at *11 (C.D. Cal. Jan.

19, 2022) ("[T]he Court notes that the California privacy rights asserted by the

Entity Defendants—California Consumer Privacy Act, California Information

Privacy Act, California Privacy Rights Act, and Article 1, Section 1 of the

California Constitution—are not applicable in this discovery proceeding. Indeed,

even to the extent the California constitution and these California statutes create a

privilege—which this Court does not decide here—only federal law on privilege

applies in cases, such as this one, involving federal question jurisdiction."); *cf.*

*Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y.), *aff'd*, 293 F. Supp. 2d 302

(S.D.N.Y. 2003) ("Under the Supremacy Clause, a federal court clearly is not

bound by the Speech or Debate Clause of the New York Constitution.").

**Third**, Article I, Section 6 of the Hawai'i Constitution does not bar

disclosure in this situation where the records do not constitute the type of "highly

personal and intimate information" protected the constitution and where the public

interest outweighs any privacy rights of the individuals involved. *Org. of Police*

*Officers*, 512, 494 P.3d at 1245 ("While public employees' personnel records

might contain 'highly personal and intimate information,' the contents of those

records that related to misconduct did not implicate the constitution.").

Concerning the records protected by the constitution, Hawai'i Courts have

looked at the tort of invasion of privacy and Restatement Second of Torts to

determine the type of information that is protected. *Id*. Here, the performance

evaluations and disciplinary records are not the type of records that are "regarded

as highly offensive to a reasonable person" as they do not concern intimate or

personal matters. *See* Restatement (Second) of Torts § 652D cmt. b ("Sexual

relations, for example, are normally entirely private matters, as are family quarrels,

many unpleasant or disgraceful or humiliating illnesses, most intimate personal

letters, most details of a man's life in his home, and some of his past history that he

would rather forget."); *cf. Dung v. Shelly Eurocars, LLC*, 470 P.3d 1128, at *3

(Haw. Ct. App. 2020) (holding that meeting between employee and employer

concerning customer complaint did not involved "highly personal [or] intimate

information"). Additionally, the records are not sufficiently private in that

employers often disseminate such information to third parties during reference

checks, the City seemingly disclosed such records to the EEOC, *see* Exhibit G, and

the City is required by statute to disclose certain disciplinary records under the

Uniform Information Practices Act. Haw. Rev. Stat. § 92F-14(b)(4); *Ragge*, 165

F.R.D. at 604 ("The disclosure of . . . employment records [in an employee's personnel file] is not unusual or unexpected.").

Moreover, even if such employment records were subject to some privacy protection under the constitution, given that age discrimination and retaliation are made illegal under both federal and Hawai'i law, the public interest in ensuring a discrimination and retaliation-free working environment outweighs the privacy rights at issue. *Ragge*, 165 F.R.D. at 605 ("The importance of the information to plaintiff's claims outweighs any privacy interest defendants may have."). To hold otherwise would permit the government to discriminate against its employees and then use the privacy of such employees as a shield to claims of discrimination.

**Fourth** and relatedly, the privacy rights of the other recruits can adequately be accommodated by making the production of any confidential documents subject to the Stipulated Protective Order [dkt. 31] already entered in this case. Thus, the privacy rights of other recruits would not be put at risk by allowing Plaintiff to review their disciplinary and performance records subject to the Stipulated Protective Order. *Brown*, 173 F.R.D. at 264 ("The privacy concerns raised by the defendants are legitimate concerns, but they can be protected by a carefully crafted protective order.").

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant

this motion and compel the City to produce unredacted versions of documents

related to the performance and evaluation of recruits for the 104th, 105th, and

106th classes of the HFD Academy.

DATED: Honolulu, Hawaii, June 2, 2022.

/s/ Mateo Caballero
MATEO CABALLERO
Attorney for Plaintiff
JONATHAN MCCLURE

16